IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW B.,<br><br>    Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | No. 17 C 9167<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final decision of the Commissioner of the Social Security Administration denying Plaintiff Andrew B.'s claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties have filed competing motions for summary judgment. For the following reasons, Plaintiff's motion is granted in part and denied in part, and the Commissioner's motion is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

On April 30, 2014, Plaintiff filed his applications for DIB and SSI, alleging disability since September 15, 2012 due to carpal tunnel syndrome, torn ligaments in his hands, arthritis in his wrists and hands, and muscle spasms. (R. 78–80, 86,

124, 128, 242.) His applications were denied initially and again upon reconsideration. (R. 78, 86, 94–95, 109–13, 121–28.) Plaintiff thereafter requested a hearing before an ALJ, which was held on August 31, 2016. (R. 46, 129–30.) Plaintiff, represented by an attorney, appeared and testified at the hearing, as did a vocational expert ("VE"). (R. 46–76.)

On November 22, 2016, the ALJ denied Plaintiff's claims for DIB and SSI, finding him not disabled under the Social Security Act. (R. 25–45.) The Appeals Council then denied Plaintiff's request for review on October 27, 2017. (R. 1–5.)

## II.     ALJ DECISION

In determining that Plaintiff was not disabled, the ALJ analyzed Plaintiff's claims according to the five-step sequential evaluation process established under the Social Security Act. (R. 29–30.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 15, 2012, his alleged disability onset date. (R. 30.) At step two, the ALJ found that Plaintiff had the following severe impairments: history of left hand/wrist injury and right hand/wrist disorder. (R. 31.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 32.)

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following restrictions: Plaintiff should

never climb ladders, ropes or scaffolding; he should no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, and twist; he should avoid concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery; and he should use his hands no more than frequently to handle, finger, and feel. (R. 32–33.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a bus driver. (R. 36.) At step five, the ALJ determined that, based on the VE's testimony, Plaintiff could perform other jobs that exist in significant numbers in the national economy, such as hand packager, cashier, and housekeeper. (R. 36–37, 39.) Because of this determination, the ALJ found that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (R. 39.)

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine disability, the ALJ considers five questions in the following order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation (i.e., past work)? and (5) Is the

plaintiff unable to perform any other work? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding of disability. *Young*, 957 F.2d at 389. A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* If the plaintiff meets this burden, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II. JUDICIAL REVIEW

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner, which is reviewable by this Court. 42 U.S.C. §§ 405(g), 1383(c)(3); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This Court may not substitute its judgment for that of the ALJ, reweigh evidence, resolve conflicts, or decide questions of credibility. *Id.*; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th

Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" so long as "the decision is adequately supported") (internal citation and quotations omitted).

Although the ALJ need not "address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). This requires the building of "an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must explain the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate his analysis so that we can follow his reasoning.") (internal citations omitted).

The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining disability falls upon the ALJ, not the Court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Even so, an ALJ must consider all relevant evidence, and it cannot "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff contends that the ALJ's decision was erroneous and requires remand for a number of reasons. First, Plaintiff contends that the ALJ's RFC assessment limits him to less than the full range of "light work" and, as such, it contradicts the ALJ's subsequent findings that Plaintiff can perform light work. Relatedly, Plaintiff contends that remand is required so that the ALJ can identify the exertional functions required by light work that he cannot perform. Second, Plaintiff claims that the ALJ erred in finding that Plaintiff could "frequently" use both his hands for handling objects over the course of an eight-hour workday; he seeks remand so that the ALJ can properly determine Plaintiff's ability to use, on a sustained basis, his hands and wrists to handle objects. Third, Plaintiff argues that the ALJ's hypothetical questions to the VE were flawed in several respects and, accordingly, cannot support the ALJ's finding that Plaintiff was disabled at step five of the sequential evaluation process. After careful consideration of the record and the parties' arguments, the Court concludes that the ALJ erred in finding that Plaintiff could frequently use both his hands to handle objects for the entire period of alleged disability, warranting remand for further administrative proceedings.

The Court begins with the factual background relevant to its analysis. Plaintiff worked for twenty-five years as a bus driver. (R. 243.) In July 2012, his bus was rear-ended by another vehicle, injuring the thumb on his non-dominant left hand when it was jammed into the steering wheel. (R. 401; *see* R. 49–50, 60.) The following month, orthopedic surgeon John Fernandez, M.D. diagnosed Plaintiff with

6

a collateral ligament tear in his left thumb and performed surgery to repair it. (R. 370, 419–21, 425–27.) Plaintiff's left thumb pain seemed to improve by the end of the year, but he then began complaining of left wrist pain. (R. 375, 377–80, 382, 386, 388, 392.) Dr. Fernandez diagnosed Plaintiff with de Quervain's tenosynovitis[1] in his left wrist and administered a cortisone injection in January 2013. (R. 370–76.) Although Plaintiff continued to complain of pain in his left wrist and thumb, Dr. Fernandez opined in February 2013 that Plaintiff was "technically at maximum medical improvement" and that there was nothing further in terms of treatment that he could recommend. (R. 364–65.)

Even so, Dr. Fernandez recommended that Plaintiff undergo a Functional Capacity Evaluation ("FCE"), which was performed by Elizabeth Williamson, DPT in May 2013. (R. 360, 429–40.) Williamson opined that Plaintiff had the ability to function within the medium physical demand category, but she also noted that Plaintiff demonstrated self-limiting behavior when tested for his ability to lift materials, indicating that additional abilities could be possible. (R. 429.) Williamson further found that Plaintiff exhibited full strength and normal range of motion in both wrists and all fingers of both hands and that he could use his right hand to frequently handle, finger, grasp, and manipulate objects with no observed deficits. (R. 429–30, 434, 437–38.) Plaintiff, however, could only use his left hand

---

[1] De Quervain's tenosynovitis "is a painful condition affecting the tendons on the thumb side of [one's] wrist." Symptoms include pain and swelling near the base of the thumb and difficulty moving the thumb and wrist when doing something that involves grasping or pinching. Mayo Clinic, De Quervain's tenosynovitis – Symptoms and causes, https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/symptoms-causes/syc-20371332 (last visited Dec. 3, 2018).

7

occasionally to finger, grasp, and manipulate objects, and Williamson noted deficits in Plaintiff's left-hand repetitive gripping of objects and motor skills. (R. 429–30, 434.) Williamson's conclusion regarding Plaintiff's ability to handle objects with his left hand, though, was less than clear: her summary indicates that Plaintiff could only occasionally perform this activity, but her findings during the evaluation twice note that Plaintiff could frequently handle objects using his left hand with no deficits observed. (*Compare* R. 429, *with* R. 430, 434.)

In a July 2013 work status form, Dr. Fernandez stated that Plaintiff could return to work in medium duty capacity, lifting less than thirty pounds, and he appeared to concur with the restrictions from the May 2013 FCE. (R. 359.) Subsequent doctor visits in 2013 and 2014 noted wrist joint pain, and at a November 2014 visit with Lettricia Gunaratnam, M.D., Plaintiff complained of pain in both wrists. (R. 463–67.) At this visit, Dr. Gunaratnam noted tenderness with range of motion in Plaintiff's right wrist, as well as a ganglion cyst. (R. 34, 467.)

Early the next year, Kristopher Carpenter, M.D. opined that Plaintiff had significant, chronic bilateral wrist pain. (R. 470.) Dr. Carpenter further noted that Plaintiff's status after his left thumb surgery was "complicated by persistent pain" and that although Plaintiff's ganglion cyst had been removed, he still experienced "residual pain and wrist deformity." (*Id.*) Through the remainder of 2015, Plaintiff continued to complain of right wrist pain. (R. 500–01, 505, 563, 567–71.)

In December 2015, Plaintiff presented to orthopedic surgeon Tariq B. Iftikhar, M.D., complaining of pain and swelling on the radial aspect of his right

8

wrist. (R. 500–01.) Dr. Iftikhar believed that Plaintiff had de Quervain's tenosynovitis and arthritis in his right wrist and thumb. (*Id.*) In January 2016, Dr. Iftikhar operated on Plaintiff's right wrist to release his de Quervain's tenosynovitis. (R. 492, 494.) Post-surgery, Plaintiff reported "doing very well" and he did not complain of any particular problem; indeed, he reported that "the pain [was] gone completely." (R. 492.) Dr. Iftikhar subsequently opined that by the end of February 2016, Plaintiff could return to work without any accommodations. (R. 496.) Nonetheless, when Plaintiff later presented to another doctor complaining of a cough in June 2016, the doctor noted tenderness and limited range of motion in Plaintiff's wrists. (R. 552–54.)

State agency consultants also reviewed Plaintiff's medical records and opined about his functional capabilities. (R. 79–85, 87–93, 96–106.) In July 2014, at the initial level of review, Vidya Madala, M.D. opined that Plaintiff had no manipulative limitations, which would include any handling limitations. (R. 83, 91); *see Herrmann v. Colvin,* 772 F.3d 1110, 1112 (7th Cir. 2014) (characterizing handling as a manipulative activity). But in March 2015, at the reconsideration level of review, Richard Bilinsky, M.D. opined that Plaintiff's bilateral wrist pain limited him to "occasional" handling in both hands. (R. 102–03.)

With this background set forth, the Court turns to the parties' arguments, beginning with those that relate to the ALJ's RFC assessment. The RFC is an administrative assessment of what work-related activities a claimant can perform despite his physical and mental limitations. *Young v. Barnhart*, 362 F.3d 995, 1000

(7th Cir. 2004); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The ALJ makes this assessment "based upon the medical evidence in the record and other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008). In her decision, the ALJ must describe "how the evidence, both objective and subjective, supports each conclusion" contained in the RFC assessment. *Zblewski v. Astrue*, 302 F. App'x 488, 492 (7th Cir. 2008) (unpublished decision); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about [the claimant's] physical capabilities[.]"). The Court's tasks on appeal are to "determine whether substantial evidence supports the ALJ's RFC conclusion" and whether the ALJ built an "accurate and logical bridge from the evidence" to this conclusion. *See Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013); *Young*, 362 F.3d at 1002 (internal quotations omitted).

Here, the ALJ concluded that Plaintiff retained the RFC to "perform less than the full range of light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (R. 32.) The ALJ then went on to list several restrictions addressing Plaintiff's postural, manipulative, and environmental limitations, including a restriction permitting Plaintiff to "use his hands no more than frequently to handle, finger, and feel." (R. 32–33.)

The Court first addresses the ALJ's finding that from the alleged disability onset date (in September 2012) through the date of the decision (in November 2016), Plaintiff retained the RFC to "use his hands . . . frequently to handle[.]" (R.

10

32–33, 39.) How often Plaintiff can use his hands for handling is a key issue: based on the VE's testimony, an individual who could perform bilateral handling "frequently" was employable, but an individual who could do so only "occasionally" (i.e., less than frequently) was not.[2] (R. 72–75.) As the VE explained, occupations at the light exertional level and above generally require frequent use of the dominant upper extremity for handling (although only occasional use of the non-dominant upper extremity for handling), and occupations at the sedentary exertional level require the ability to frequently use both upper extremities for handling. (R. 74–75.)

The Court concludes that the ALJ's determination that Plaintiff could use both hands frequently to handle objects throughout the four-plus year period at issue is not supported by substantial evidence. Specifically, the ALJ failed to support her conclusion that Plaintiff could frequently handle objects with his *right* hand for the entire time period between September 2012 and November 2016.

As the ALJ recognized, Plaintiff's alleged right-hand symptoms and limitations arose well after the September 2012 alleged onset disability date. (R. 34.) Indeed, the first documented problems with Plaintiff's right hand or wrist do not appear in the record until November 2014, more than two years later. (R. 467); (Pl.'s Mem. at 9) ("[P]laintiff experienced significant right wrist impairments and

---

[2] Handling involves "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands," including the ability "to seize, hold, grasp, or turn an object." SSR 85-15, 1985 WL 56857, at *2, *7 (Jan. 1, 1985). Occasional handling would be performed very little to, at most, one-third of the workday, whereas frequent handling would be performed between one-third and two-thirds of the workday. SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

11

limitations that are well documented from November, 2014 to June 2016.").[3]

Apparently, the delay between Plaintiff's alleged onset date and the appearance of his right hand and wrist problems affected the ALJ's assessment of Plaintiff's subjective symptom allegations. (R. 34.) But whatever impact this delay may have had on the ALJ's subjective symptom assessment, which is not challenged on appeal, the fact remains that Plaintiff did not appear to have any right hand or wrist problems until November 2014. There is also evidence that Plaintiff's right hand and wrist problems were significantly alleviated by February 2016, after he underwent right wrist surgery on January 21, 2016. (*See* R. 492, 494.) In fact, Dr. Iftikhar opined that after the surgery, Plaintiff could return to work by the end of February 2016 without any accommodations. (R. 496.)

Thus, from September 2012 to November 2014 and from February 2016 to at least June 2016,[4] there is evidence supporting the ALJ's decision to restrict Plaintiff to frequent handling with his right hand is supported for these time frames. *See Falls v. Berryhill*, No. 17 C 2805, 2018 WL 5839955, at *6 (N.D. Ill. Nov. 7, 2018) (finding that a more restrictive RFC is supported by evidence indicating fewer or no restrictions).

---

[3] The Court notes Plaintiff's attempt to change his earlier claim about when his right hand and wrist symptoms and limitations were first documented. (Pl.'s Reply at 6–8) (identifying November 2013 as the date when his right hand and wrist impairments were first documented). The newly-cited documents, however, do not clearly show right hand and wrist problems prior to November 2014. (*See* R. 463–66.)

[4] The June 2016 treatment note indicating tenderness and limited range of motion in Plaintiff's wrists could arguably indicate that Plaintiff's right hand and wrist problems had returned by this time. (*See* R. 552–54.) On remand, the ALJ should consider if and how this treatment note affects Plaintiff's RFC.

But the alleged period of disability also includes the time period from the onset of Plaintiff's right hand and wrist pain and issues to his right wrist surgery, *i.e.*, from approximately November 2014 to January 2016. And the only medical assessment of Plaintiff's right-hand handling capabilities during this time frame came from Dr. Bilinsky, who opined in March 2015 that Plaintiff could only occasionally handle objects with both hands. (R. 102–03.) Despite acknowledging this proposed limitation, the ALJ found that a frequent bilateral handling limitation was more appropriate. (R. 35–36.)

The ALJ was under no obligation to accept Dr. Bilinsky's occasional handling restriction. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (explaining that the ALJ "was not required to afford any particular weight to" the opinions of two non-treating physicians). Nevertheless, the ALJ was not permitted to "substitute [her] own judgment for [Dr. Bilinsky's] opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870. Once the ALJ rejected Dr. Bilinsky's "occasional" handling restriction, she was required to identify other medical evidence that supported her conclusion that a frequent handling limitation was more appropriate. *See Norris v. Astrue*, 776 F. Supp. 2d 616, 637–38 (N.D. Ill. 2011) (explaining that after the ALJ discredited the medical opinions in the record regarding the claimant's RFC, "she was then required to call a medical expert or, alternatively, explain what other medical basis she relied on in" determining the RFC).

The ALJ, however, did not identify any medical evidence demonstrating that Plaintiff could frequently handle objects with his right hand from approximately November 2014 to January 2016. The ALJ discussed the May 2013 FCE, which found that Plaintiff could use his right hand to frequently handle objects, but this assessment was made more than a year before Plaintiff presented with a right wrist ganglion cyst and tenderness in November 2014. Thus, the May 2013 FCE is not relevant to Plaintiff's right-hand handling capabilities after the problems with his right hand and wrist began in November 2014. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (explaining that a medical assessment made a year before the claimant suffered the allegedly disabling injury told the court "little if anything about the credibility of her later complaints of disabling pain").[5]

The Commissioner contends that the ALJ's frequent handling restriction is supported by substantial evidence because it "struck a middle position" between two sets of medical opinions: Dr. Bilinsky's March 2015 "occasional" bilateral handling opinion (R. 102–03) on the one hand, and Dr. Fernandez's February 2013 work status report (R. 521) and Dr. Iftikhar's February 2016 opinion (R. 496), which

---

[5] The Court acknowledges Dr. Madala's July 2014 opinion that Plaintiff had no manipulative, i.e., handling, limitations. (R. 83, 91.) But there is no indication that the ALJ relied upon this opinion to impose her "frequent handling" determination; in fact, the ALJ did not discuss the opinion, other than to simply state that she gave it "some weight." (R. 35); *see Scott*, 647 F.3d at 739 (explaining that the court's review is confined "to the rationale offered by the ALJ"). The July 2014 opinion, like the May 2013 FCE, was also given before Plaintiff's documented right hand and wrist issues began. Lastly, the Commissioner does not argue that Dr. Madala's July 2014 opinion provides support for the ALJ's RFC assessment, thereby waiving any defense of the ALJ's decision on this basis. *See Kelly v. Colvin*, No. 14 C 1086, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015).

14

indicate no limitations in handling, on the other. (*See* Def.'s Mem. at 6–7, 9–10.) The Commissioner's argument is not persuasive.

First, there is no reason to believe that Dr. Fernandez assessed Plaintiff's right hand and wrist capabilities in February 2013. At this time, Dr. Fernandez's treatment was limited to Plaintiff's left hand and thumb problems, and his work status report only refers to left hand and arm restrictions. (*See, e.g.*, R. 364–65, 370, 521.) Indeed, the Commissioner seemingly admits that Dr. Fernandez's February 2013 work status report only supports the ALJ's decision as to the amount of handling Plaintiff could perform with his "*left* arm or hand." (Def.'s Mem. at 7) (emphasis added). Thus, Dr. Fernandez's February 2013 opinion does not shed any light on Plaintiff's *right* hand and wrist capabilities. Second, while Dr. Iftikhar's February 2016 opinion did address Plaintiff's ability to use his right hand, this opinion was offered after Plaintiff underwent right wrist surgery on January 21, 2016. (*See* R. 494, 496.) As such, it—along with Plaintiff's post-surgery reports that he was doing very well and that the pain in his right wrist was "gone completely" (see R. 492)—say nothing about Plaintiff's right-hand handling capabilities *before* the surgery, *i.e.*, during the relevant November 2014–January 2016 time period.

The Commissioner also argues that Plaintiff's right hand and wrist problems occurred largely between May 2015 and January 2016 and, thus, they did not meet the 12-month durational requirement required for disability. (Def.'s Mem. at 11–12.) This argument is likewise flawed. First, although the ALJ noted Plaintiff's report of right wrist pain in May 2015 and his subsequent surgery in January 2016

15

(R. 34), she never used the intervening time period (or the fact that it was less than 12 months) to justify her "frequent handling" restriction. (*See* R. 33–36.) Thus, the Commissioner cannot use it to defend the ALJ's restriction on appeal. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (explaining that the Commissioner's "attorneys may not advance an explanation the [ALJ] never made"); *Scott*, 647 F.3d at 739. Second, Dr. Gunaratnam noted tenderness, complaints of pain, and a ganglion cyst in Plaintiff's right wrist in November 2014, six months before the Commissioner's May 2015 starting point. (R. 467.) Even if Plaintiff's purported failure to seek treatment for many months afterwards "undercuts his argument for occasional handling," as the Commissioner claims, (Def.'s Mem. at 12), Dr. Gunaratnam's treatment note still shows that Plaintiff's right wrist problems began well before May 2015. Similarly, Dr. Carpenter's February 2015 letter states that Plaintiff suffered significant, chronic bilateral wrist pain with residual pain and wrist deformity in his right wrist.[6] (R. 470.)

By concluding that Plaintiff could use his right hand to frequently handle objects from September 2012 through November 2016, the ALJ necessarily found that he had this capability from November 2014 through January 2016. Yet there is no medical evidence in the record to support the ALJ's right-hand handling restriction for this latter time frame. Specifically, the May 2013 FCE and Dr. Iftikhar's February 2016 opinion do not support such a finding, as they merely

---

[6] Whether the ALJ properly gave "no weight" to Dr. Carpenter's conclusion that Plaintiff "had not been able to work," as the Commissioner contends, is beside the point. (Def.'s Mem. at 12.) Regardless of this conclusion, the letter provides evidence of right hand or wrist pain predating the Commissioner's chosen May 2015 date.

establish Plaintiff's right-hand capabilities at the "bookends" of the May 2013–February 2016 period without accounting for intervening events that bear on these capabilities, such as the onset of Plaintiff's right-hand problems in November 2014 and Plaintiff's right wrist surgery in January 2016. *See Walker v. Berryhill*, 900 F.3d 479, 484 (7th Cir. 2018) ("The ALJ's error stemmed from considering evidence from particular points between 2008 and 2014 to support a conclusion covering the entire period. By trying to fit the evidence to support a conclusion covering such a broad period of time, the ALJ failed to remain watchful for the intermediate possibility of Walker becoming disabled sometime between the bookends of January 2008 and December 2014.").

The matter therefore must be remanded for further consideration of Plaintiff's right hand limitations during the relevant time frame. *See Scott*, 647 F.3d at 740 (requiring remand where "the ALJ did not identify any medical evidence to substantiate her belief that" the claimant was capable of meeting the assessed RFC physical requirements); *Suess v. Colvin*, 945 F. Supp. 2d 920, 934–35 (N.D. Ill. 2013) (remanding where the ALJ failed to identify medical evidence to support her physical RFC restrictions). On remand, the ALJ may wish to craft an RFC that addresses Plaintiff's left-hand and right-hand manipulative capabilities separately. Whatever form her RFC assessment takes, however, the ALJ should ensure that she explains why she imposed the restrictions she does by building an "accurate and logical bridge" between the evidence and her RFC restrictions. *See Scott*, 647 F.3d at 740 ("The ALJ needed to explain how she reached her conclusions about [the

claimant's] physical capabilities."); *Young*, 362 F.3d at 1002 (finding that the ALJ failed to build the requisite bridge from the evidence of the claimant's impairments to his RFC finding).

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part, and the Commissioner's motion for summary judgment is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**　　　　　　　　　　　**ENTERED:**

**DATE:　April 11, 2019**　　　　　　　_____
　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**